UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DEBORAH WILSON,

                        Plaintiff,

v.

GENERAL MILLS,

                        Defendant.
_____

**REPORT AND RECOMMENDATION**

08-CV-00597(S)(M)

JOSEPH BOULANGER,

                        Plaintiff,

v.

GENERAL MILLS, INC.,

                        Defendant.

08-CV-00920(S)(M)

_____

These actions were referred to me by Hon. William M. Skretny for supervision of all pretrial proceedings [7, 43].[1] Before me are the motions of defendant General Mills, Inc. to enforce the agreement settling the claim of plaintiff Deborah Wilson [37] (which motion is joined in by plaintiff Joseph Boulanger [44]), and Ms. Wilson's motion to reopen her case [39]. No party requested oral argument of the motions. For the following reasons, I recommend that General Mills' motion be granted, and that Ms. Wilson's motion be denied.

---

[1]     Bracketed references are to CM-ECF docket entries.

## BACKGROUND

Plaintiffs commenced these actions against General Mills alleging, *inter alia*, employment discrimination in violation of 42 U.S.C. §2000e, *et seq.* ("Title VII"). The actions were consolidated by Order dated July 6, 2009 [27]. At the parties' request, I held a lengthy settlement conference in chambers on December 14, 2009, which both Ms. Wilson and her attorney (Andrew Fleming) attended. General Mills made clear at the conference that it would not settle with either plaintiff individually, and that it would only settle with both.

Following lengthy discussions, the parties reached an agreement to settle the case, along with Ms. Wilson's related Workers' Compensation claim against General Mills. The settlement was then placed on the record in open court, in the presence of both Ms. Wilson and Mr. Fleming [42, filed under seal to preserve the agreed confidentiality of the settlement terms]. Ms. Wilson admits that she "was present throughout the court proceedings and heard that which was discussed" (Wilson Affidavit [45-1], ¶5).

During those proceedings, I stated: "I believe it's everyone's intention that notwithstanding the fact that a written agreement will be executed dotting the Is and crossing the Ts, so to speak, that the terms placed on the record today are the material terms of the settlement, and that a legally enforceable settlement arises today . . . . We'll issue an order of dismissal with leave to reopen the case solely for failure to comply with the terms of the settlement" [42, pp. 8-

9].[2]  Both Mr. Fleming and General Mills' attorney (Keith C. Hult) expressly agreed with that statement [42, p. 9].

Thereafter, General Mills cancelled the oral argument of plaintiff Wilson's Workers' Compensation claim, which had been scheduled for December 16, 2009. Hult Affirmation [47], ¶5.

On December 21, 2009 Judge Skretny issued a Text Dismissal Order [36] stating that "this case is DISMISSED with right to reopen within 60 days if the terms of the settlement placed on the record before Magistrate Judge McCarthy on 12/15/09 are not consummated". On January 28, 2010 General Mills filed a motion to enforce the settlement agreement [37]. In support of that motion, General Mills' attorney, David L. Christlieb, stated that he prepared and forwarded a settlement agreement to Mr. Fleming on December 21, 2010,[3] but was advised by Mr. Fleming that "he has met with Wilson repeatedly in attempts to have her sign these agreements, but that she has had a change of heart and no longer wishes to settle her lawsuit and workers' compensation claim as she agreed to do on December 14, 2009". Christlieb Affirmation [37-1], ¶¶5, 8.

On February 1, 2010 Ms. Wilson filed a document entitled "Notice of Non-Consummation of Settlement" [39], in which she requested that the case be reopened because "the settlement placed on the record in this case before Magistrate Judge McCarthy has not been consummated". On February 3, 2010 I held a telephonic conference on the record with counsel

---

[2] Although the settlement terms themselves are confidential, disclosure of the quoted provisions of the settlement proceedings does not violate the parties' confidentiality concerns.

[3] The written settlement agreement is filed under seal [46].

concerning the motions [40], and set a briefing schedule [41]. During the February 3 conference, Mr. Fleming stated: "I received a draft of the settlement agreement from opposing counsel and it did in fact memorialize what was put on the record and included the confidentiality provisions and included a modest sum as a penalty - I have had a number of subsequent discussions at length with my client . . . . I have not been able to cause my client to sign the agreement".[4] When I asked whether there was "something in the agreement that is in addition to or different from the stipulation that was placed on the record", Mr. Fleming responded "I don't believe it does Your Honor".

        Thereafter, both Ms. Wilson and Mr. Fleming submitted affidavits in opposition to General Mills' motion and in support of the motion to reopen the case. Ms. Wilson states that she "thought that we were agreeing to agree and that the settlement wouldn't be final until I signed a settlement agreement. Prior to going into the courtroom to put the settlement on the record my attorney told me that until there was a signed agreement that the case wouldn't be officially settled". Wilson Affidavit [45-1], ¶¶3-4. She further states that she was "upset with the way [Mr. Fleming] handled my case, especially during settlement negotiations. He spent too much time trying to settle my case . . . . The settlement amounts are not enough to compensate me for the harm the company caused me". Id., ¶7.

        Mr. Fleming admits that he told Ms. Wilson that the case would not be officially settled until there was a signed agreement, but states that he "did not say this to deceive her, but rather because it was my understanding". Fleming Declaration [45-2], ¶6. He also states that "at

---

[4]      Transcribed from digital recording of February 3 proceedings.

the court session on December 14, 2009, the parties agreed to agree. Since then, there has not been a subsequent agreement", id., ¶5, and that "the settlement agreement that was presented to Plaintiff for her signature includes items that were not discussed in detail during the Court session". Id., ¶4.

Although the parties did not request oral argument of the motions, Mr. Fleming wrote to me on February 15, 2010 requesting that plaintiff Wilson be allowed the opportunity for an *ex parte* meeting with me, stating that "meeting with Ms. Wilson might help as she is having a difficult time understanding the situation. If you could schedule a meeting before deciding on the defendant's motion it would be greatly appreciated". I told Mr. Fleming that I would consider this rather unusual request only if the other parties consented, and with the understanding that nothing said in the meeting would affect my decision of the pending motions.

Having obtained the consent of General Mills and Mr. Boulanger, I met separately with Ms. Wilson (and her mother) and Mr. Fleming in chambers on February 17, 2010. During that meeting, Ms. Wilson reiterated that she did not understand that the settlement was to be binding as of December 14, and that she had been repeatedly assured by Mr. Fleming that it would not be binding unless she executed the written settlement agreement.

**ANALYSIS**

The parties have not questioned this court's jurisdiction to enforce the settlement agreement. However, "even if the parties do not raise the issue of jurisdiction, it is the obligation of a court . . . to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists." Polin v. Wisehart & Koch, 2004 WL 1944721, *3 (S.D.N.Y. 2004). While jurisdiction to

enforce the settlement agreement does not exist where the order of dismissal makes no reference to the agreement, "the situation [is] quite different if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal". Kokkonen v. Guardian Life Insurance Co. of America, 511 U.S. 375, 381 (1994).

Since that is the situation here, this court has ancillary jurisdiction to enforce the settlement agreement. "The doctrine of ancillary jurisdiction . . . recognizes federal courts' jurisdiction over some matters (otherwise beyond their competence) that are incidental to other matters properly before them." Id. at 378. "A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it." Garibaldi v. Anixter, Inc., 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008) (Larimer, J.).

Turning to the merits of the motions, it is difficult to understand how either Ms. Wilson or Mr. Fleming could harbor a belief that the settlement would not be effective unless and until the written settlement agreement was executed, in view of her admission that she "was present throughout the court proceedings and heard that which was discussed" (Wilson Affidavit [45-1], ¶5). However, even if they held such a belief, it is irrelevant for purposes of these motions, since it was not disclosed to General Mills or the court at the time the settlement was placed on the record. "It is a person's manifest, rather than undisclosed, intention that determines his rights and obligations." United States v. Miner, 956 F. 2d 397, 399 (2d Cir.1992). "Disclosed intent, not some undisclosed subjective intent or understanding, controls contractual relationships." Marine Transport Lines, Inc. v. International Organization of Masters, Mates & Pilots, 696 F. Supp.1, 19 (S.D.N.Y. 1988), aff'd, 878 F.2d 41 (2d Cir. 1989), cert. denied, 493 U.S. 1022 (1990).

Thus, whether or not Ms. Wilson subjectively intended to settle her claims on December 14, Mr. Fleming acknowledged on the record that the settlement was binding as of that date, and she is bound by that acknowledgment. "Courts must rely on the representations of counsel about their client's positions . . . . [Plaintiff] is bound by the actions of his retained counsel on his behalf." Britto v. Salius, 2010 WL 93108, *2 (2d Cir. 2010) (Summary Order); Hallock v. State 64 N.Y.2d 224, 231, 485 N.Y.S.2d 510, 513 (1984) (" Phillips cannot be heard to challenge the settlement. He was in court during the entire pretrial conference. At no time during negotiation of the settlement or dictation of the agreement into the record . . . did Phillips voice an objection. Phillips acquiesced in, consented to, and is bound by the settlement").

Nor does Ms. Wilson's alleged dissatisfaction with Mr. Fleming entitle her to void the settlement. "Allowing a party to evade the consequences of the acts or omissions of his freely selected agent would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent." S.E.C. v. McNulty, 137 F. 3d 732, 739 (2d Cir. 1998), cert. denied, 525 U.S. 931 (1998). If she did not *actually* authorize Mr. Fleming to settle the case on her behalf, then she must be "relegated to relief against [her] attorney for any damages which his conduct may have caused". Hallock, supra, 64 N.Y.2d at 230, 485 N.Y.S.2d at 513.

Similarly, Ms. Wilson may not rely on her own failure to execute the written settlement agreement as a reason to reopen the case, since "a party may not, by its own conduct, create the event causing the impracticability of performance . . . in fact, it must make all reasonable efforts to avoid the impossibility." Chemetron Corp. v. McLouth Steel Corp., 381 F. Supp. 245, 257 (N.D.Ill. 1974).

Therefore, notwithstanding Ms. Wilson's failure to execute the written settlement agreement, the agreement placed on the record on December 14, 2009 is enforceable. "A voluntary, clear, explicit, and unqualified stipulation of dismissal entered into by the parties in court and on the record is enforceable even if the agreement is never reduced to writing, signed, or filed . . . . The settlement remains binding even if a party has a change of heart between the time he agreed to the settlement and the time those terms are reduced to writing." Powell v. Omnicom 497 F.3d 124, 129 (2d Cir. 2007). *See also* Garibaldi v. Anixter, Inc., 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008) (Larimer, J.) ("a preliminary oral agreement, entered into in anticipation of a later writing memorializing its terms, is no less binding than a written agreement, so long as the parties have not expressly reserved the right not to be bound in the absence of a writing").

Failure to require execution of the settlement documents would be extremely unfair to General Mills, which cancelled argument of plaintiff's Workers' Compensation claim in reliance upon the settlement of this case, including that claim (*See* Hult Affirmation [47], ¶5 ("if the workers' compensation case is not settled per the agreement reached before this Court, General Mills will be irreparably harmed, having waived its right to oral argument on the issues in [the Workers' Compensation] case").

Therefore, I recommend that Ms. Wilson be required to execute the written settlement agreement [46], along with all documentation necessary to discontinue her Workers' Compensation claim against General Mills. See Garibaldi, supra, 533 F. Supp. 2d at 312 ("the parties are ordered to execute the Settlement Agreement and Release of Claims within twenty

(20) days from the date of entry of this Order"); Village of Kaktovik v. Watt, 689 F. 2d 222, 230 (D.C. Cir. 1982) ("a settlement contract may not be unilaterally rescinded. Upon breach by one party, the other party may obtain damages or specific performance as appropriate").

Section 3 of the written agreement prepared by General Mills [46] specifies a dollar amount of liquidated damages for violation of the confidentiality provisions. While liquidated damages were mentioned during the December 14 proceedings [42, p. 8], no specific amount was mentioned at that time. However, Mr. Fleming characterized that sum as "modest" during the conference on February 3, 2010 [40], and "has never approached Defendant's counsel to ask for any lesser amount of liquidated damages". Hult Affirmation [47], ¶4. Therefore, I recommend that this clause be enforced.

However, section 18 of the written agreement contains a provision for attorneys' fees, which had not been discussed, much less agreed to, during the proceedings on December 14, 2009. Therefore, I recommend that this clause be stricken from the written agreement which plaintiff Wilson must execute.[5]

---

[5] *See* Garibaldi, supra, 533 F. Supp. 2d at 312 ("Garibaldi also objects to the written Settlement Agreement and Release provided by Anixter, and argues that it includes additional terms to which the parties did not agree during their verbal negotiations. The Court has thoroughly reviewed the Settlement Agreement and Release, and finds that its provisions are overwhelmingly standard, 'boilerplate' terms which do not expand the parties' undisputed oral agreement . . . . The lone exception is paragraph 6 of the Settlement Agreement . . . There is no evidence that the parties discussed or agreed to such a term. As such, the Court will order that paragraph stricken from the written Settlement Agreement").

**CONCLUSION**

For these reasons, I recommend that General Mills' motion to enforce the settlement agreement [37] be granted, and that plaintiff Wilson's motion to reopen the case [39] be denied. Pursuant to 28 U.S.C. §636(b)(1), it is hereby

ORDERED, that this Report and Recommendation be filed with the clerk of this court.

ANY OBJECTIONS to this Report and Recommendation must be filed with the clerk of this court within 14 days after receipt of a copy of this Report and Recommendation.

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but was not, presented to the magistrate judge in the first instance. See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co., 840 F. 2d 985 (1st Cir. 1988).

Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order. Thomas v. Arn, 474 U.S. 140 (1985); Wesolek v. Canadair Ltd., 838 F. 2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72.3(a)(3) of the Local Rules of Civil Procedure for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority." Failure to comply with the provisions of Rule 72.3(a)(3), or with the similar provisions of Rule 72.3(a)(2) (concerning

objections to a Magistrate Judge's Report and Recommendation), may result in the district judge's refusal to consider the objection.

**SO ORDERED.**

DATED:     February 18, 2010

/s/ Jeremiah J. McCarthy<br>
JEREMIAH J. MCCARTHY<br>
United States Magistrate Judge